ELECTRONICALLY FILED
Craighead County Circuit Court in Jonesboro
David Vaughn, Craighead Circuit Clerk
2026-Feb-05 14:25:16
16JCV-26-381
C02D02 : 12 Pages

## IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
## _____ DIVISION

**BRENT MOONEYHAM**                                                      **PLAINTIFF**

**v.**                               **Case No. _____**

**CVS PHARMACY INC.; CVS RX SERVICES, INC.; and
CVS PHARMACY INC. AGENT FOR CVS RX SERVICES, INC.**       **DEFENDANTS**

### COMPLAINT

Plaintiff Brent Mooneyham ("Plaintiff"), for his Complaint against Defendants CVS Pharmacy Inc.; CVS RX Services, Inc.; and CVS Pharmacy Inc. Agent for CVS RX Services, Inc. (collectively, "Defendants" or "CVS"), states and alleges:

### INTRODUCTION

1. This is a civil action for breach of contract, promissory estoppel, and fraud/deceit, based on the misconduct of Defendants.

### PARTIES, JURISDICTION, AND VENUE

2. At all times relevant to this action, Plaintiff was a citizen of Arkansas, residing in Jonesboro, Craighead County, Arkansas. Plaintiff remains a resident of Jonesboro.

3. At all times relevant to this action, and upon information and belief, CVS was a corporation incorporated and domiciled in Rhode Island and was licensed to maintain retail operations in Jonesboro, Craighead County, Arkansas. At all times relevant hereto, CVS did in fact maintain such operations.

1

4.    This Court has jurisdiction over the subject matter of this action and the parties pursuant to Ark. Code Ann. §§ 16-60-101, 16-13-201, and 16-58-120.

5.    Venue is proper in the Circuit Court of Craighead County pursuant to Ark. Code Ann. § 16-60-101 as a substantial part of the events or omissions giving rise to the claims stated herein occurred in Craighead County, and Plaintiff resided in Craighead County during the events or omissions giving rise to the claims stated herein.

## FACTS

6.    The facts giving rise to this dispute are straightforward and originate from an agreement between Plaintiff and Defendants that Defendants subsequently breached to Plaintiff's detriment.

7.    At times relevant to this action, CVS operated retail locations throughout Arkansas, including Craighead County, Arkansas, that contained pharmacies.

8.    At times relevant to this action, Plaintiff held an active license to practice pharmacy in Arkansas, issued by the Arkansas State Board of Pharmacy.

9.    On September 27, 2016, Plaintiff was hired by CVS as an overnight pharmacist at Arkansas-based CVS locations that were open 24 hours a day, meaning that both the store and the pharmacy within the store were open to the public 24 hours a day. Plaintiff's work included filling prescriptions and interacting with pharmacy customers.

10.    In approximately mid-November of 2021, CVS requested Plaintiff to fill in—on what CVS claimed would be a temporary basis—daytime shifts at CVS locations around the state of Arkansas.

2

11.    Plaintiff had worked the night shift for most of his 25-year career as a pharmacist and was accustomed to working the night shift. Plaintiff had no desire to work in a daytime pharmacist position.

12.    Concerned that CVS was in the process of permanently discontinuing 24-hour pharmacy operations at its retail locations, thereby eliminating the night shift pharmacist position that Plaintiff preferred, Plaintiff resigned his employment with CVS on November 24, 2021, effective immediately.

13.    Upon receipt of Plaintiff's resignation, Bret Weatherford ("Weatherford"), a CVS District Leader and one of Plaintiff's supervisors, contacted Plaintiff later on November 24 and requested that he continue his CVS employment on the night shift, but with the pharmacy section of the store temporarily closed.

14.    Under the proposed arrangement, Plaintiff would be working overnight in the CVS store, primarily filling prescriptions but with the pharmacy section of the store closed, meaning Plaintiff would have no customer contact.

15.    Plaintiff expressed to Weatherford his concern that CVS planned ultimately to permanently cease offering 24-hour prescription services and, consequently, that his former overnight position, which included customer contact, would no longer be available.

16.    Plaintiff further expressed to Weatherford that he was not interested in working the overnight shift with the pharmacy section of the store closed.

17.    Weatherford, acting within his actual or apparent authority as a member of CVS management, advised Plaintiff that CVS was not permanently eliminating 24-hour pharmacy service at its locations and that, in the near future, CVS would resume 24-hour pharmacy service,

3

at which time Plaintiff could resume working his preferred overnight shift with the pharmacy section open for business.

18.    Acting within his actual or apparent authority as a member of CVS management, Weatherford further assured Plaintiff that everyone in CVS management, from the Regional Director on up, was aware of and in agreement with this plan, and that CVS most certainly would be resuming 24-hour pharmacy service in the near future.

19.    Weatherford further assured Plaintiff that so long as CVS's competition, Walgreens, offered 24-hour pharmacy services, CVS would do likewise.

20.    In reliance upon Weatherford's assurances and promises made on behalf of CVS, Plaintiff resumed work with CVS. Plaintiff began working the night shift with the pharmacy section of the store closed, with the expectation that CVS would soon thereafter resume 24-hour pharmacy operations, as promised by Weatherford, which would allow Plaintiff to resume working his preferred overnight shift with the pharmacy section open for business.

21.    Upon information and belief, CVS made the same assurances and promises—that is, that CVS would soon thereafter resume 24-hour pharmacy operations—to other CVS pharmacists.

22.    Upon information and belief, other pharmacists likewise remained employed with CVS based on CVS's assurances and promises that it would soon thereafter resume 24-hour pharmacy operations.

23.    On September 27, 2022, Plaintiff's former employer, Walgreens, contacted him to offer Plaintiff a position as a pharmacist working overnight at its Arkansas retail stores, which similarly offered 24-hour pharmacy operations. Walgreens's offer included a $75,000.00 signing

4

bonus, $20.00 per hour incentive pay for some period of time (in addition to regular pay), and other enhanced benefits and perquisites.

24.    Plaintiff declined Walgreens's job offer based upon CVS's promise made through Weatherford that CVS would soon return to its former 24-hour full-service arrangement and that Plaintiff would be working the overnight shift with 24-hour pharmacy operations.

25.    After October of 2022, Walgreens's job offer was no longer available to Plaintiff under those terms.

26.    On February 6, 2023, Plaintiff was advised that, contrary to its earlier assurances and promises to Plaintiff, CVS was not going to return to its previous 24-hour full-service operation at the store at which Plaintiff worked or elsewhere in Arkansas. Plaintiff was initially advised of such by Casey Jones, Pharmacy Manager. This was later confirmed by Ashley Ellis, Weatherford's replacement.

27.    Plaintiff reasonably relied upon CVS's assurances and promises that it would be returning the store at which Plaintiff worked to its prior 24-hour full-service status in declining Walgreens's employment offer.    .

28.    CVS knew at the time of its assurances and promises to Plaintiff that CVS had no intention of fulfilling those promises. CVS expected, or reasonably should have expected, Plaintiff would detrimentally rely upon its false promises and, upon information and belief, made the false promises for the purpose of inducing Plaintiff to retain his CVS employment rather than resign his employment to work elsewhere. CVS knew those promises were false when they were made.

29.    CVS's actions have caused Plaintiff damages because Plaintiff relied to his detriment on CVS's false assurances and promises in declining a more lucrative job offer, which is no longer available to Plaintiff.

5

## COUNT I – Breach of Contract

30. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if set forth fully here.

31. A breach-of-contract claim requires proof of: (1) the existence of a valid and enforceable contract between the plaintiff and defendant, (2) the obligation of defendant thereunder, (3) a violation by the defendant, and (4) damages resulting to plaintiff from the breach. *Ark. Dev. Fin. Auth. v. Wiley*, 2020 Ark. 395, 5, 611 S.W.3d 493, 498 (2020)

32. CVS, acting through its District Leader and management representative, Bret Weatherford, entered into an agreement with Plaintiff whereby Plaintiff agreed to resume and continue his employment with CVS in exchange for CVS's promise to resume 24-hour pharmacy operations "in the near future," thereby allowing Plaintiff to work his preferred overnight shift with the pharmacy section open for business.

33. Weatherford entered into this agreement with Plaintiff while acting within his actual or apparent authority as a District Leader and member of CVS management, and his promises were binding upon CVS.

34. Plaintiff performed his obligations under the agreement by resuming his employment with CVS and continuing to work for CVS in reliance on CVS's promises. Plaintiff further performed by declining the competing job offer from Walgreens on September 27, 2022, thereby demonstrating his commitment to continuing his employment with CVS based on CVS's promises.

35. CVS breached the agreement by failing to resume 24-hour pharmacy operations as promised. On February 6, 2023, Plaintiff was advised by Casey Jones, Pharmacy Manager, and

6

later by Ashley Ellis, CVS District Leader, that, contrary to CVS's earlier promises, CVS was not going to return to 24-hour full-service operations.

36.    Accordingly, CVS breached the agreement and the duty of good faith and fair dealing implied in every contract.

37.    Plaintiff has been damaged as a direct and proximate result of CVS's breach of the agreement and should receive payment for all resultant and consequential damages incurred in an amount to be proven at trial, including reasonable attorneys' fees and costs pursuant to Ark. Code Ann. § 16-22-308.

## COUNT II – Promissory Estoppel

38.    Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if set forth fully here.

39.    The doctrine of promissory estoppel is applicable where: (a) a promise was made; (b) the promisor should reasonably have expected the promise to induce action or forbearance by the promisee; (c) the promise did induce such action or forbearance; and (d) injustice can only be avoided by enforcement of the promise. *Rigsby v. Rigsby*, 356 Ark. 311, 316, 149 S.W.3d 318, 322 (2004).

40.    Plaintiff resigned his employment with CVS because it reassigned him to a day-shift pharmacist role that he did not want.

41.    Weatherford then spoke with Plaintiff and requested that he continue his CVS employment on the night shift, but with the pharmacy section of the store temporarily closed.

42.    Plaintiff expressed to Weatherford his concern that CVS planned ultimately to permanently cease offering 24-hour prescription services and, consequently, that his former overnight position, which included customer contact, would no longer be available.

7

43.    Weatherford, acting within his actual or apparent authority as District Leader and a member of CVS management, assured and promised Plaintiff that CVS was not permanently eliminating 24-hour pharmacy service at its locations and that, in the near future, CVS would resume 24-hour pharmacy service, at which time Plaintiff could resume working his preferred overnight shift with the pharmacy section open for business.

44.    Weatherford further assured Plaintiff that everyone in CVS management, from the Regional Supervisor on up, was aware of and in agreement with this plan, and that CVS most certainly would be resuming 24-hour pharmacy service in the near future.

45.    Thus, Weatherford, acting under his actual or apparent authority as an agent of CVS, promised that CVS would shortly resume 24-hour pharmacy service and Plaintiff could resume his previous position working the night shift for the 24-hour pharmacy service.

46.    In making these promises, CVS reasonably expected Plaintiff to act in reliance on the promises. Indeed, CVS made these promises in direct response to Plaintiff's expressed concerns about the permanent elimination of his preferred overnight pharmacist position and his resulting resignation.

47.    Upon information and belief, CVS made these promises for the specific purpose of inducing Plaintiff to resume and retain his employment with CVS rather than seek employment elsewhere.

48.    Plaintiff justifiably relied in good faith on CVS's promise by returning to work for CVS in a role he did not want and declining a more lucrative job offer from Walgreens. CVS's promises were specific, concrete, and made by a management-level employee with actual or apparent authority to speak on CVS's behalf regarding employment matters and operational decisions. Plaintiff had no reason to doubt the veracity of Weatherford's representations regarding

8

CVS's business plans and, indeed, Weatherford told Plaintiff that all members of upper management agreed with his representation that the 24-hour pharmacy service would soon resume.

49.    Plaintiff incurred loss to his detriment because of such reliance because he would not have returned to work for CVS and would have accepted Walgreens's subsequent job offer had he known that CVS had no intention of resuming its 24-hour pharmacy service. The Walgreens job offer is no longer available to Plaintiff under the terms offered on September 27, 2022.

50.    Injustice may only be avoided by enforcing CVS's promises.

51.    As a direct and proximate result of his reasonable reliance on CVS's promises, Plaintiff has been irreparably damaged in an amount to be proven at trial.

## COUNT III – Fraud/Deceit

52.    Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if set forth fully here.

53.    A claim for fraud requires proof of: (a) a false representation of a material fact; (b) knowledge that the representation is false or reckless disregard for its truth; (c) intent to induce action or inaction in reliance upon the representation; (d) justifiable reliance on the representation; and (e) damages resulting from such reliance. *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 580, 66 S.W.3d 568, 577 (2002).

54.    A promise to perform a future act constitutes actionable fraud if, at the time the promise was made, the promisor had no intention of performing the promised act. *Delta Sch. of Com., Inc. v. Wood*, 298 Ark. 195, 200, 766 S.W.2d 424, 427 (1989).

55.    CVS, acting through its District Leader and management representative, Bret Weatherford, made false representations of material fact to Plaintiff, including but not limited to: (a) that CVS was not permanently eliminating 24-hour pharmacy service at its retail locations; (b)

9

that CVS would resume 24-hour pharmacy service in the near future; (c) that CVS management, "from the Regional Supervisor on up," was aware of and in agreement with this plan; and (d) that as long as CVS's competitor, Walgreens, offered 24-hour pharmacy services, CVS would do likewise.

56.    These representations were false when made. CVS never intended to resume 24-hour pharmacy service as represented to Plaintiff.

57.    CVS knew that its representations to Plaintiff were false at the time they were made, or made such representations with reckless disregard for their truth or falsity. CVS's internal decision to permanently discontinue 24-hour pharmacy operations was made prior to Weatherford's assurances to Plaintiff.

58.    CVS made its false representations with the intent to induce Plaintiff to rely thereon. Upon information and belief, CVS made its false promises for the specific purpose of inducing Plaintiff to resume and retain his CVS employment rather than resign to work elsewhere. CVS understood that Plaintiff's concerns about the elimination of 24-hour pharmacy service were the reason for his resignation, and CVS tailored its false representations to address those specific concerns and thereby induce Plaintiff to return.

59.    Plaintiff justifiably relied upon CVS's false representations. Weatherford was Plaintiff's immediate supervisor and a District Leader with actual or apparent authority to speak on CVS's behalf regarding employment matters and operational plans. Moreover, Weatherford specifically represented that his statements reflected the views and plans of CVS management "from the Regional Supervisor on up." Plaintiff had no reason to doubt the veracity of these representations and no independent means of verifying CVS's internal business decisions.

10

60.    As a direct and proximate result of his justifiable reliance on CVS's fraudulent misrepresentations, Plaintiff suffered damages, including but not limited to: (a) the $75,000.00 signing bonus offered by Walgreens; (b) $20.00 per hour incentive pay for some period of time (c) other enhanced benefits and perquisites offered by Walgreens; and (d) other consequential damages resulting from Plaintiff's continued employment with CVS in reliance on CVS's fraudulent representations.

61.    CVS's conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's rights. CVS knowingly made false promises to Plaintiff for the purpose of inducing him to remain with CVS and forego other employment opportunities, while knowing that it had no intention of fulfilling those promises. CVS's conduct entitles Plaintiff to an award of punitive damages in an amount sufficient to punish CVS and deter similar conduct in the future, to be determined at trial.

62.    Plaintiff requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brent Mooneyham requests that this Court grant him:

A. An award of all monetary damages resulting from Defendants' actions described herein;

B. An award of costs and attorneys' fees incurred in bringing this action;

C. Punitive damages in an amount sufficient to punish Defendants and deter similar conduct in the future;

D. Pre-judgment and post-judgment nterest to the maximum extent permitted by law; and

E. All other relief the Court deems just and proper.

Respectfully submitted,

11

ROSE LAW FIRM,
a Professional Association

By: _____

David P. Martin (Ark. Bar No. 92241)
Ross E. Simpson (Ark. Bar No. 2016241)
120 East Fourth Street
Little Rock, Arkansas 72201
Telephone: (501) 375-9131
Facsimile: (501) 375-1309
Email: dmartin@roselawfirm.com
         rsimpson@roselawfirm.com

***ATTORNEYS FOR BRENT MOONEYHAM***

12